UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LIPPERT COMPONENTS                )
MANUFACTURING, INC., *et al*.,     )
                                   )
        Plaintiffs,                )
                                   )
        v.                         )    Case No. 3:16-CV-264 JD
                                   )
MORRYDE INTERNATIONAL INC.,        )
and MOR/RYDE INC.,                 )
                                   )
        Defendants.                )

## MEMORANDUM OPINION AND ORDER

Plaintiff Lippert Components Manufacturing, Inc. and Backsaver International, Inc.

d/b/a/ Gorilla-Lift[1] allege that Defendants MORryde International, Inc. and MOR/ryde, Inc. have

infringed and induced the infringement of U.S. Patent No. 6,550,840 (filed on December 28,

1999, and issued to inventor David Rayburn on April 22, 2003), referred to as the '840 patent

[DE 22-1]. The patented invention concerns liftgate assist technology known as "Gorilla-Lift"®.[2]

The patent has 18 claims, with claims 1, 11, 17, and 18 being independent. Lippert asserts that

claims 1, 6-7, 10-12, and 14-15 of the '840 patent are being infringed (hereinafter "the pertinent

claims"). The "accused instrumentality" concerns Defendants' product known as the Zero

Gravity (or Zero-G) Ramp Door [DE 22-2; DE 59-2]. The parties have narrowed the dispute to

---

[1] Backsaver is the owner of the patent, while Lippert is the exclusive licensee of the patent since
February 3, 2016. The Court refers to Plaintiffs collectively as "Lippert" for ease of reference.

[2] The patent-in-suit is entitled "Tailgate Lift Assembly" and relates to a device which allows a
hingedly attached trailer tailgate to be raised and lowered with relative ease due to the biasing of
the lift assembly.

11 terms/phrases that require construction.[3] A key to the dispute is whether the lifting assembly is limited to a horizontal orientation, which primarily concerns the disputed terms "tailgate lift(ing) assembly," "housing," and "side rail." Defendants also contend that many of the disputed terms are indefinite under 35 U.S.C. § 112(b).

## I.    Legal Standard

As a matter of law, the court must construe the claims of the patent for the jury. *Markman v. Westview Instruments, Inc*., 52 F.3d 967, 977 (Fed. Cir. 1995). Claim construction is crucial because it "defines the scope of the protected invention." *Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp*., 55 F.3d 615, 619 (Fed. Cir. 1995).

In interpreting a disputed claim, the court must first look at the intrinsic evidence of record—the patent itself, including the claims, the specification, and (if in evidence) the prosecution history. *Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576, 1582 (Fed. Cir. 1996). The process begins with the words of the claims. *Teleflex, Inc. v. Ficosa North American Corp*., 299 F.3d 1313, 1324 (Fed. Cir. 2002). "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotations and citations omitted); *Teleflex*, 299 F.3d at 1324 ("The claim language defines the bounds of claim scope."). Absent an express intent otherwise, claim terms should be given "the ordinary and customary meaning . . .

---

[3] The parties amended Joint Claim Construction and Prehearing Statement was filed on March 13, 2017 [DE 57]. Both parties filed opening claim construction briefs [DE 59; DE 62], and response briefs were filed on April 21, 2017 [DE 65; DE 66]. A *Markman* hearing was held on October 26, 2017.

that the term would have to a person of ordinary skill in the art in question at the time of the invention."[4] *Phillips*, 415 F.3d at 1313. "[T]he context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms." *ACTV, Inc. v. Walt Disney Co*., 346 F.3d 1082, 1088 (Fed. Cir. 2003).

However, the claims do not stand alone and they "must be read in view of the specification, of which they are a part." *Phillips*, 415 F.3d at 1315 (quoting *Markman*, 52 F.3d at 979). The specification includes the drawings and the written description of the invention. *Playtex Products, Inc. v. Procter & Gamble, Co*., 400 F.3d 901, 909 (Fed. Cir. 2005). The specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (quoting *Vitronics*, 90 F.3d at 1582). It can resolve ambiguities between the ordinary and customary meaning of words if the words used in the claim are not sufficiently clear to allow the scope of the claim to be determined from words alone. *Teleflex*, 299 F.3d at 1325. Yet, there's a difference "between using the specification to interpret the meaning of a claim," which is permissible, and "importing limitations from the specification into the claim," which is not. *Phillips*, 415 F.3d at 1323. "[T]he general principle is that limitations from the specification are not to be read into the claims." *Sjolund v. Musland*, 847 F.2d 1573, 1582 (Fed. Cir. 1988) (citation omitted).

_____

[4] For the purpose of claim construction, Defendants do not dispute Lippert's assertion in this case that a person of ordinary skill in the art ("PHOSITA") is someone who has either (a) no college degree, but at least 3 to 5 years of experience in product design and development in the field of trailer components; or (b) a Bachelor of Science in Mechanical Engineering with 2 years of related experience. The declaration of Lippert's technical expert, Dr. Charles Reinholtz, supports the same [DE 46-1].

Finally, the court must look to the patent's prosecution history, which "consists of the complete record of the proceedings before the [USPTO] and includes the prior art cited during the examination of the patent." *Phillips*, 415 F.3d at 1317. "The prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id*. A patentee may modify the "meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution." *Purdue Pharma L.P. v. Endo Pharms., Inc*., 438 F.3d 1123, 1136 (Fed. Cir. 2006).

Nonetheless, if intrinsic evidence does not resolve the ambiguity in a disputed claim term, the court may then look to extrinsic evidence, such as expert testimony, inventor testimony, dictionaries, and treatises. *Vitronics*, 90 F.3d at 1584. Extrinsic evidence may help the court better understand "the way in which one of skill in the art might use the claim terms." *AquaTex Indus., Inc. v. Techniche Solutions*, 419 F.3d 1374, 1380 (Fed. Cir. 2005) (citations omitted). But extrinsic evidence may not be used to "contradict any definition found in or ascertained by a reading of the patent documents." *Phillips*, 415 F.3d at 1322-23 (quoting *Vitronics*, 90 F.3d at 1584, n.6). As the Federal Circuit explained in *Phillips*: "Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Id*. at 1316 (citation omitted).

## II.    Claim Construction

### A. Horizontal Orientation (as it relates to the "tailgate lift(ing) assembly," the "housing," and the "side rail")

It is undisputed that the products accused of infringement in this case generally have a vertical orientation. Thus, it is unsurprising that a significant dispute has arose over whether the patented tailgate lifting assembly is limited to a horizontal orientation. Per the parties, this issue concerns the terms "tailgate lift(ing) assembly," "housing," and "side rail."

Defendants argue that the patentee limited his invention to a horizontal apparatus on top of the side rail of a trailer because the specification (including the Summary of the Invention, the Description of the Drawings, and the Detailed Description of the Preferred Embodiment) repeatedly refer to the "tailgate lift assembly *of the present invention*" and indicate that the invention is placed on the upper portion of the side wall or rail of the trailer (1:62-65; 2:7-10, 37-43, 50-60; 2:66-3:1; 3:4-7, 27-32; 5:30-32; FIGS. 1-6). Defendants assert that the inventor also described his invention using terminology only applicable to a separate horizontal apparatus, such as, "bottom portion of the housing," "top portion," "top wall," and "length" (3:27-32, 4:51-57, 5:30-34, 67), as opposed to using other terms such as "front," "back," "height," or more generic terminology, such as, "side A."[5] Defendants further argue that the patent's prosecution history reveals that the United States Patent Office ("PTO") considered the '840 patent to be limited to a horizontal apparatus because it allowed the issuance of U.S. Patent No. 7,347,476 ("the Luehr patent"), stating that the prior art of record (including the '840 patent) did not

---

[5] The term "top wall" is no longer a disputed term and references in the patent to a "top wall" are contained in claims that are no longer being asserted in this case.

disclose a "lift cable extending into the lower region of the upright frame." [DE 62-3]. Taking each of the defense's arguments in turn, the Court explains why it finds them unavailing.

First, a review of the claims in the '840 patent reveals that the word "horizontal" is <u>never</u> used and that the claim language does not require a horizontal orientation. *See Phillips*, 415 F.3d at 1312 (noting that the claims of a patent define the invention) (citing *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  Specifically, claim 1 of the '840 patent does not require that the claimed tailgate lifting assembly be oriented in any particular way and only describes a housing as having a "pre-determined length." Claim 11 requires that the claimed "tailgate lift assembly" "extend[] along at least one" of two "side rails" of a "trailer." But these references do not require that either the lift assembly or the "side rails" be oriented only horizontally. Moreover, none of the remaining pertinent claims (all of which are dependent claims) add a horizontal limitation or other language implying such a limitation. Thus, the express claim language does not indicate that the pertinent claims should be limited to a horizontal orientation.

Second, Defendants want the Court to read a limitation from the specification into the pertinent claims, but this is considered to be "one of the cardinal sins of patent law." *See Phillips*, 415 F.3d at 1319-20. It is axiomatic that "a court may not read a limitation into a claim from the specification." *Innova/Pure*, 381 F.3d at 1117. Thus, even if the specification had referred to the ability of the tailgate lift(ing) assemblies to be placed or mounted horizontally, Defendants' attempts to limit the claims to such an orientation would be improper. *See Phillips*, 415 F.3d at 1310 (reversing Federal Circuit panel's claim construction for improperly relying on the specification to limit the claim term "baffles," by construing it to exclude structures angled at 90

degrees where no such limitation appeared in the claim language). While it is true that the

Figures of the preferred embodiment depict the invention oriented horizontally, and the Detailed

Description which describes the Figures repeatedly refers to the "present invention," in this case,

that does not mean that all of the claims must be so limited. *See, e.g., Agfa Corp. v. Creo Prods.

Inc.*, 451 F.3d 1366, 1376-77 (Fed. Cir. 2006) (noting that without any indication beyond the

necessary depiction to suggest limiting the invention to this single embodiment (concerning a

"stack" arranged in a particular manner), the broader language of the claims cannot carry the

unexpressed and unintended limitation of a horizontal arrangement of stacks). Here, the '840

patent explicitly states that its Figures show, "by way of example" (2:45-62), what is

subsequently described in the "Detailed Description of the Preferred Embodiment" of the

invention (2:63-5:64).[6] In other words, the Figures only serve as exemplars of the invention and

do not serve as a basis for limiting the claims to the preferred embodiment. And although the

"Summary of the Invention" describes "the present invention," it does not then reference the

Figures.

Moreover, the inventor described prior art that used spring-type devices and hydraulic

means for raising and lowering gates "from a vertical and horizontal position" (1:37-42)—thus,

the inventor knew and understood how to describe this type of device with respect to vertical and

horizontal orientation, but didn't provide such a limitation with respect to his patent. *See, e.g.,

Teleflex*, 299 F.3d at 1328 (Fed. Cir. 2002) (noting that in the circumstances of this case the

---

[6] Thus, even though the specification describes the cable as extending "rearward[ly]" or away
from the front of the trailer (*e.g*., 3:39-40, 49-50; 4:22-25, 40-44, 62-66; 5:3-5, 25-29, 42-45),
these references, to repeat, are contained in the Detailed Description of the Preferred
Embodiment.

record is devoid of "clear statements of scope" limiting the term appearing in claim 1 to having a particular characteristic; and thus, the court is "constrained to follow the language of the claims, rather than that of the written description").

The Court also notes that the patentee did not set out a definition and act as his own lexicographer, or disavow the full scope of the claim terms either in the specification or during prosecution. *See Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1358 (Fed. Cir. 2016). The specification does not use the word "horizontal;" the specification describes, and the Figures depict, "by way of example," aspects of a "preferred embodiment" of the invention, 2:48, 63-65, which does not limit the claims. *Phillips*, 415 F.3d at 1323; *Agfa Corp.*, 451 F.3d at 1376-77. For that reason, neither that description nor what the drawings depict meet the "exacting" criteria for lexicography or disclaimer. *See GE Lighting Sols., LLC v. AgiLight, Inc*., 750 F.3d 1304, 1309 (Fed. Cir. 2014).

As to extrinsic evidence, Defendants' speculation on whether, how, and to what extent the PTO might have reviewed the earlier '840 patent during the prosecution of the later, unrelated Luehr patent (which involved a ramp door and "frame assembly"), provides no indication of how a PHOSITA may have used a claim term in the '840 patent. *See e.Digital Corp. v. Futurewei Techs., Inc.,* 772 F.3d 723, 726 (Fed. Cir. 2014) ("While the '108 patent may incorporate by reference the '774 patent as prior art, it does not change the fact that the patents are not related"); *Abbott Labs. v. Dey, L.P*., 287 F.3d 1097, 1104 (Fed. Cir. 2002) (finding the relationship between two unrelated patents, although having common subject matter, a common inventor, and the same assignee, "insufficient to render particular arguments made during prosecution of [one of the patents] equally applicable to the claims of [the other patent]").

Moreover, statements made during prosecution of a later, unrelated patent cannot be used to interpret claims of the asserted patent. *See Pfizer, Inc. v. Ranbaxy Laboratories Ltd.*, 457 F.3d 1284, 1286, 1290 (Fed. Cir. 2006). Thus, the Court reaches the limited conclusion that the terms "tailgate lift(ing) assembly," "housing," or "side rail" do not require a horizontal orientation limitation in the pertinent claims.

Finally, at this time the Court declines to find that a vertical orientation would render the invention inoperable. Defendants' conclusory argument on this point, premised on speculation and unsupported by any evidence, is insufficient to determine whether a vertical orientation would render the invention inoperable. *See Trumbull v. Kirschbraun*, 67 F.2d 974, 980 (C.C.P.A. 1933) (the burden is to prove the inoperability of the invention, and if one fairly practicing the disclosure, with the aid of the known art, is successful in attempting to operate the mechanism, that is sufficient); *see also EMI Grp. N. Am., Inc. v. Cypress Semiconductor Corp.*, 268 F.3d 1342, 1348-49 (Fed. Cir. 2001) (addressing the burden of proof associated with showing inoperability).

## B. Indefiniteness

Defendants assert that seven of the eleven disputed terms/phrases are indefinite, which are identified as follows:

  a. "tailgate lift(ing) assembly;"

  b. "said cable extending substantially through said housing;"

  c. "roller" / "roller guide member;"

  d. "tailgate causing said spring to stretch upon lowering of said tailgate" / "lowering of said tailgate causes said spring to stretch;"

e. "housing having a pre-determined length;"

f. The language of claim 7 (that is, "The tailgate lifting assembly of claim 6 further comprising a trailer and a tailgate, said lifting assembly affixed to said trailer, said tailgate hingedly connected to said trailer."); and,

g. The language of claim 14 (that is, "The assembly of claim 11 wherein said tailgate lifting assembly is comprised of a first tailgate lifting assembly and a second tailgate lifting assembly, said first tailgate lifting assembly extending along said first side rail of said trailer, said second tailgate lifting assembly extending along said second side rail of said trailer.").

Relative to claim definiteness, 35 U.S.C. § 112(b) states that "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." Most recently, the Supreme Court of the United States in *Nautilus, Inc. v. Biosig Instruments, Inc.,* 134 S. Ct. 2120, 2124 (2014) held that a patent claim is indefinite if it is shown by clear and convincing evidence that the claim, read in the light of the specification and the prosecution history, fails to inform those skilled in the art about the scope of the invention "with reasonable certainty." This test "mandates clarity, while recognizing that absolute precision is unattainable." *Nautilus*, 134 S. Ct. at 2128-29. Indefiniteness is a matter of claim construction, and the same principles that generally govern claim construction are applicable to determining whether allegedly indefinite claim language is subject to construction. *Praxair, Inc. v. ATMI, Inc*., 543 F.3d 1306, 1319 (Fed. Cir. 2008). Indefiniteness, like claim construction, is a question of law. *Id*. A court may rely on expert testimony in determining whether a claim term is indefinite. *See, e.g., Berkheimer v. HP Inc.,* 881 F.3d 1360, 1364 (Fed. Cir. 2018).

In support of their indefiniteness argument, Defendants submit only attorney argument and appear to rely only on the patent's intrinsic evidence. Lippert contends that this is

insufficient because Defendants cannot meet their evidentiary burden without expert testimony. But Lippert's position sweeps too broadly.

While it is true that expert testimony may be required with respect to complex inventions, *see, e.g., Elcommerce.com, Inc. v. SAP AG*, 745 F.3d 490, 503 (Fed. Cir. 2014), *vacated*, 564 F. App'x 599 (Fed. Cir. 2014) (noting that typically expert testimony will be necessary in cases involving complex technology), it is also true that in a case like this, involving a less complex patent, the Court can determine whether a claim is indefinite via the intrinsic evidence alone. *See, e.g., Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1335 (Fed. Cir. 2010) (involving patents-in-suit that were directed to various techniques for labeling and detecting nucleic acids, wherein the Court held: "Because the intrinsic evidence here provides 'a general guideline and examples sufficient to enable a person of ordinary skill in the art to determine [the scope of the claims],' the claims are not indefinite.") (internal citation omitted).

And although Defendants did not offer any expert evidence, Lippert has provided the declaration and testimony of their technical expert, Dr. Charles Reinholtz. In his declaration [DE 46-1], Dr. Reinholtz indicated that based on his education, experience, and investigation, the disputed claim terms are definite, and that a PHOSITA would have understood the terms to have their plain and ordinary meanings (as set forth in his declaration and parroted in Lippert's proposed construction of each and every disputed term). Such unrebutted evidence shall be credited, to the extent it is not conclusory or at odds with the intrinsic evidence, as detailed below with respect to each disputed term. *See SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1195 (Fed. Cir. 2013); *Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1361 (Fed. Cir. 2005).

Accordingly, bearing these principles in mind, the Court addresses each of the eleven disputed claim terms below, including the seven terms identified by Defendants as being indefinite.

## C. Disputed Terms

### a. "tailgate lift(ing) assembly"

The pertinent claims that include the disputed term "tailgate lift(ing) assembly" consist of independent claims 1 and 11, as well as dependent claims 6-7 and 10 (which ultimately depend from claim 1), and dependent claims 14-15 (which ultimately depend from claim 11). The parties agree that an object of the tailgate lifting assembly is to allow the ease of raising and lowering a tailgate, but they dispute whether the claimed "tailgate lift(ing) assembly" is a self-contained device, or just any generic "structure" and whether the claimed "tailgate lift(ing) assembly" must include a trailer. Specifically, Lippert argues that the term "tailgate lift(ing) assembly" should be construed to mean "a self-contained device that at least provides a closing force to a tailgate." Whereas Defendants argue that the term should be defined as a "structure provided along the side wall or rail of a trailer to bias a tailgate." In the alternative, Defendants argue that the term is indefinite.[7]

In the '840 patent, "tailgate lift(ing) assembly" is used in every claim and, therefore, is presumed to have the same meaning throughout those claims. *In re Varma*, 816 F.3d 1352, 1363–64 (Fed. Cir. 2016) ("[T]he principle that the same phrase in different claims of the same

---

[7] Defendants also argued that the term should be defined as a "horizontal structure," however, the Court has previously determined that a horizontal orientation limitation is not indicated for this term.

patent should have the same meaning is a strong one, overcome only if 'it is clear' that the same phrase has different meanings in different claims.") (citation omitted). As to the pertinent claims, independent claims 1 and 11 both require the tailgate lifting assembly to include: a spring, a cable, and a roller/roller guide or a "guide member," and claim 1 explicitly claims a "housing" as part of the tailgate lifting assembly that contains some components of the assembly. Pertinent claims 6 and 7 incorporate the affixing of the assembly's cable to the tailgate and the assembly to the trailer.

Thus, the Court must reject Defendants' contention that the assembly (as identified in claim 1) must include the "trailer" (as identified in dependent claim 7), because such a construction would render claim 7 redundant. *See Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1370 (Fed. Cir. 2005) ("The concept of claim differentiation 'normally means that limitations stated in dependent claims are not to be read into the independent claim from which they depend.'") (citation omitted); *Versa Corp. v. Ag–Bag Int'l Ltd.*, 392 F.3d 1325, 1330 (Fed. Cir. 2004) (an independent claim should not be construed in a manner that renders a dependent claim superfluous); *see also SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1122 (Fed. Cir. 1985) (en banc) ("It is settled law that when a patent claim does not contain a certain limitation and another claim does, that limitation cannot be read into the former claim in determining either validity or infringement.").

Relative to Lippert's construction, the Court disagrees that the patent supports construing the term to include "self-contained." Lippert seemingly advances this definition in an attempt to demonstrate that the device, because it is "self-contained," can separately be integrated with an existing trailer. But the mere fact that the tailgate lifting assembly is a device that is separate and

13

apart from a trailer does not necessarily mean that all of the components making up the device are "self-contained."

For instance, claim 1 describes a spring surrounded by the housing and at least one roller being "affixed to" the housing. On the other hand, claims 1 and 6 identify the roller as being "exposed," and further indicate that a cable exits the assembly and attaches to a tailgate. Moreover, the specification describes the assembly as containing component parts which extend beyond the housing. *See, e.g.*, 2:10-12, 5:52-55 ("The housing contains therein the biasing spring which is anchored within the housing and connected to the tailgate by a cable" and "the cable extends upward from the first roller to the tailgate"); 3:37-39 ("As is shown in FIG. 2, the lifting assembly is comprised of a housing which retains therein *several elements* of the lifting assembly") (emphasis added). Thus, a plain reading of the patent discloses that the housing, and hence the assembly, has portions that are entirely contained in it, as well as portions that are not entirely contained in it.

Were the Court to refer to Lippert's extrinsic evidence, it, too, doesn't support applying the limitation of "self-contained." Lippert's proffered dictionary definition of "assembly" states "a collection of objects; *esp.* number of component pieces fitted together to form a whole; a device consisting of numerous parts." The New Shorter Oxford English Dictionary (1993) ("Oxford English"). Thus, these definitions confirm that the pertinent claims and the '840 patent's specification use the term "tailgate lift(ing) assembly" consistent with its plain and ordinary meaning, which is captured by the phrase "*a device* to bias a tailgate." Similarly, the Court declines to adopt Dr. Reinholtz's construction of the term "tailgate lift(ing) assembly" to the extent that it references a "self-contained" device [DE 46-1, ¶ 25], because such extrinsic

evidence may not be used to "contradict any definition found in or ascertained by a reading of the patent documents." *Phillips*, 415 F.3d at 1322-23.

Given the above discussion, the Court construes the term "tailgate lift(ing) assembly" to mean "a device to bias a tailgate." Such a construction is not only consonant with the claim language, but it is entirely consistent with how the Background and Summary of the Invention describe "[t]he present invention." *See* 1:10-14 ("The present invention relates to a tailgate lift assembly and particularly to a device which allows a tailgate . . . to be raised and lowered with relative ease"); 1:60-65 ("The tailgate lift assembly of the present invention provides a means to bias a tailgate").

Finally, the Court finds that that term "tailgate lift(ing) assembly" is not indefinite. The intrinsic evidence described herein provides a description sufficient to enable a person of ordinary skill in the art to determine the scope of the claims. *Nautilus*, 134 S. Ct. at 2124 ("a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.").

### b. "housing"

Lippert argues that the term "housing" should be construed to mean "a structure that encloses one or more objects." Defendants argue that the term means a "structure separate from

the trailer located on the upper portion of a trailer side rail."[8] The pertinent claims for this disputed term are independent claim 1 and dependent claim 15.

Here, Defendants again improperly attempt to inject the limitations of a "trailer" and a trailer's "side rail" into claim 1. *See Nazomi Commc'ns, Inc.*, 403 F.3d at 1370 (discussing the concept of claim differentiation); *Versa Corp.*, 392 F.3d at 1330; *see also SRI Int'l*, 775 F.2d at 1122. Thus, for the same reasons previously provided with respect to the non-inclusion of a "trailer" limitation for the term "tailgate lift(ing) assembly," the Court rejects Defendants' proposed construction for the term "housing."

That said, the plain language of the claims support Lippert's proposed construction—except that, consistent with the Court's rejecting the term "self-contained" to describe "tailgate lift(ing) assembly," the "housing" must similarly be described as not only "enclos[ing]," but also "partially enclos[ing]," component parts. To repeat, claim 1 makes clear that one or more objects, including the roller and cable, are not necessarily "entirely" enclosed within the housing or structure, while other parts are so enclosed.[9] And thus, a proper construction of this term must reflect that fact.

Although not necessary, should the Court refer to the extrinsic evidence, it is consistent with Lippert's proposed construction as modified by the Court. Specifically, definitions of "housing" include: "[a] case or enclosure to cover and protect a structure or a mechanical

---

[8] Defendants also argued that the term should be defined as a "horizontal structure," however, the Court has previously determined that a horizontal orientation limitation is not indicated for this term.

[9] During the *Markman* Hearing, Lippert's counsel conceded that some portions of the housing are fully enclosed, while others are not entirely surrounded [DE 81 at 50].

device," McGraw-Hill Dictionary of Scientific and Technical Terms (4th ed. 1989) ("McGraw-Hill"); "a frame or box for holding a piece of machinery;" The New Lexicon Webster's Dictionary of the English Language (1989) ("Webster's"); and, "a rigid casing that encloses and protects any piece of moving or delicate equipment" (Oxford English). These definitions confirm that in this context the term "housing," as used in the pertinent claims, means "a structure that encloses or partially encloses one or more objects."

### c. "said cable extending substantially through said housing"

Lippert argues that the phrase "said cable extending substantially through said housing" should be construed to mean "the cable passing through a significant portion of the housing." Defendants argue that the phrase is indefinite. The defense specifically contends that the patent fails to inform with reasonable certainty what the term "substantially" is modifying. In other words, three possible interpretations are supported by the claim language:[10] (1) the term "substantially" could modify the term "cable," such that this limitation requires a *substantial amount of the cable* to pass through the housing; (2) the term "substantially" could modify the term "housing," such that *a substantial amount of the housing has to contain* the cable (consistent with the position advanced by Lippert); or (3) *both* a substantial portion of the cable is to be within the housing and a substantial portion of the housing is to have a cable extending

---

[10] *See, e.g., 3M Innovative Props. v. Tredegar Corp.*, 725 F.3d 1315, 1334 (Fed. Cir. 2013) (Plager, J., concurring) ("[s]ometimes such ambiguity [in claim drafting] is the result of sloppy drafting, and sometimes it appears that claims are drafted with a degree of indefiniteness so as to leave room to later argue for a broad interpretation designed to capture later-developed competition.").

through it. Defendants also contend that the term "substantially" is a term of degree that lacks reasonable certainty.

The disputed phrase only appears once in the patent. Specifically, claim 1 recites that the assembly is comprised of "a housing having a pre-determined length" and a cable "extending substantially through said housing" and "extending around" at least one roller, with the housing "surrounding said spring" and "exposing said at least one roller." 5:66-6:10. Beyond claim 1, the Court must look to the remaining parts of the patent. *Sonix Tech. Co. v. Publications Int'l, Ltd.*, 844 F.3d 1370, 1381 (Fed. Cir. 2017) (whether a claim is indefinite must be judged "in light of the specification and prosecution history" of the patent in which it appears) (citation omitted).

Here, the specification describes (and the Figures depict) that whether the tailgate is in an open or closed position, the spring is anchored and "completely" retained within the housing, may extend "approximately double that original untensioned length," and has an opposite end affixed to the cable. 4:11-27, 40-67; 5:14-30, 40-60. Plastic tubing surrounds the spring so that it "will not come into contact with the interior of housing" and retains it "within housing." *Id*. The cable is subjected to a "guiding mechanism" or roller which "allow[s] the cable to move rearwardly thereunder through rotational movement and due to the tensions caused by [the] spring," and the cable extends "outside of the area of containment of housing" so as to make contact with the tailgate. *Id*.

Thus, the language of the pertinent claim, the information contained in the specification, and the knowledge of one skilled in the art demonstrate that the spring must have room to stretch while remaining within the "pre-determined length" of the housing, and that the cable extends through the housing until guided by a roller and extending outside of the assembly. Since the

18

spring is anchored within the housing and affixed to the cable, and the cable extends rearwardly through the assembly until it interacts with the roller and exists the assembly, the patent provides the objective boundaries for the location of the spring and cable such that those of skill in the art would be informed about the scope of the invention. *See Sonix Tech. Co.,* 844 F.3d at 1376-81 (to avoid invalidity for indefiniteness, a skilled artisan must understand the inherent parameters of the invention and be informed with reasonable certainty of the scope of the claim); *see also, Enzo Biochem, Inc.,* 599 F.3d at 1335; *Biosig Instruments, Inc. v. Nautilus, Inc*., 783 F.3d 1374, 1382-84 (Fed. Cir. 2015). In other words, claim 1, when read from the perspective of the PHOSITA, who had read the specification, would be able to determine with reasonable certainty that in the phrase "said cable extending substantially through said housing," the term "substantially" modifies the term "housing," because a substantial amount of the housing has to contain the cable since the amount of the cable outside of the housing matters not.

Accordingly, the Court need not arbitrarily select one interpretation of the disputed phrase over another as Defendants contend. *See, e.g., Teva Pharms USA, Inc. v. Sandoz, Inc*., 789 F.3d 1335, 1345 (Fed. Cir. 2015) (finding a term indefinite because the intrinsic record provided no guidance as to which of three possible measures for "molecular weight" was correct); *Dow Chem. Co. v. Nova Chems. Corp*., 803 F.3d 620, 631-35 (Fed. Cir. 2015) (finding a term indefinite because the intrinsic record provided no guidance as to which of four possible methods (which produced different results) was the correct one to use). In *Teva* and *Dow Chem. Co.*, the existence of multiple methods leading to different results without guidance in the patent or the prosecution history as to which method should be used rendered the claims indefinite. *See Dow Chem. Co*., 803 F.3d at 634 (citing *Teva*, 789 F.3d at 1342-45). But here, we are not dealing

with multiple undisclosed methods. Nor can it be said that the disputed phrase leaves "the skilled artisan to consult the 'unpredictable vagaries of any one person's opinion,'" *Sonix Tech. Co.,* 844 F.3d at 1378-81 (citations omitted), because an accused infringer could compare the drawings and the written description of the '840 patent to determine that the cable passes through a significant portion of the housing. *See, id.*; *see also, Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1206 (Fed. Cir. 2017) (holding that the term "substantially filled" was not indefinite).

In fact, Dr. Reinholtz's declaration explains that "[i]t is clear from the Figure [4] that the cable extends significantly through the housing to allow the spring room to stretch within the fixed-length housing." [DE 46-1, ¶¶ 27-29]. Consistent with his declaration, Dr. Reinholtz testified during the *Markman* hearing[11] that the cable pulls the spring and the spring can stretch up until it encounters the first roller [DE 81 at 150-54]. According to Dr. Reinholtz, a PHOSITA would understand the boundaries of the spring when the tailgate is open or closed (since the geometry changes as the tailgate moves) and the fact that the stretch of the spring sets the boundaries for the cable's passing through a significant portion of the housing. *Id.* And thus, Dr.

---

[11] The Court overrules the Defendants' objection to this line of testimony as being outside the scope of the declaration, because it is not. And even if it were, Defendants did not identify any prejudice suffered. The Court finds that any such belated disclosure of Dr. Reinholtz's supplemental testimony is harmless, *see* Fed. R. Civ. P. 26(a) and 37(c)(1), given its limited nature and the fact that Defendants never bothered to depose Dr. Reinholtz after Lippert timely disclosed him as an expert witness, along with his forty-eight page declaration [DE 46-1], pursuant to Local Patent Rule 4-1(c). *See, e.g., David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (noting that while a court does not need to make explicit findings concerning the existence of justification or harmlessness, the following factors guide the court's discretion: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability to cure the prejudice; (3) the likelihood of disruption to the motion or trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date).

Reinholtz posits that a PHOSITA would not be concerned with the amount of cable that extends outside of the housing, but would understand that the phrase "said cable extending substantially through said housing" means "the cable passing through a significant portion of the housing." *Id*.

While not necessary to the determination, Dr. Reinholtz's unrebutted expert testimony highlights the fact that Defendants have not proven indefiniteness by clear and convincing evidence. S*ee, Apple Inc. v. Samsung Elecs. Co., Ltd.*, 786 F.3d 983, 1003 (Fed. Cir. 2015), *rev'd on other grounds*, 137 S. Ct. 429 (U.S. 2016) (rejecting Samsung's indefiniteness arguments for the term "substantially centered," and noting that Samsung failed to provide any evidence to support its attorney arguments). Defendants do not pose an alternative construction for the phrase "said cable extending substantially through said housing." Therefore, consistent with the preceding discussion, the Court adopts the following construction: "the cable passing through a substantial[12] portion of the housing."

### d. "roller" / "roller guide member"

Lippert argues that the terms "roller" and "roller guide member" should be construed to mean "rotatable device for directing the cable." Defendants argue that the terms are indefinite primarily because different terms should not have the same construction.

---

[12] The Court declines to replace the term "substantially" for "significant." Lippert's proffered dictionary definitions for "substantial" don't specifically cite the term "significant" [DE 59-3 at 15], and courts strongly disfavor claim constructions that merely replace one word with a synonym. *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 863 (Fed. Cir. 2004) (agreeing that merely rephrasing or paraphrasing the plain language of a claim by substituting synonyms does not represent genuine claim construction); *see also Int'l Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1374 (Fed. Cir. 2004) (rejecting the district court's construction that used a synonym because it disregarded the word chosen by the patentee).

Claim 1 recites that the "cable extend[s] around said at least one roller." 6:7-8. Claim 11 elaborates that the cable is "guided by" the "roller guide member." 6:51-53. The specification does not specifically refer to a "guide member," but it does confirm that these structures must be rotatable. For example, the specification states that the "rollers [22 and 23] are rotatable within the area between the sidewalls," 4:48-50, and "[a]s the tailgate is further lowered, both first roller [22] and second roller [23] rotate aiding in the rearward movement of cable." 5:3-5. Moreover, the specification indicates that the rollers [22 and 23] "provide a guiding mechanism by which the cable may move axially within the housing rearward therefrom with relative ease." 4:40-44. The Summary of the Invention also indicates that an object of the invention involves a "cable [that] is subjected to a guiding mechanism such that it may readily slide axially within the interior of the housing." 2:29-32.

Thus, the '840 patent appears to use the terms "roller" and "roller guide member" interchangeably to mean a "rotatable device for guiding the cable." *See, e.g., Bancorp Servs., L.L.C. v. Hartford Life Ins. Co*., 359 F.3d 1367, 1373-74 (Fed. Cir. 2004) (disagreeing that the use of two different terms in asserted claims tend to support the conclusion that the two terms cannot be synonyms for one another). While use of different terms to mean the same thing may be poor drafting practice, it is not unknown for different words to be used to express similar concepts. *See, id*. In that vein, the fact that unasserted claim 17 uses the term "guide member" and unasserted claim 18 recites "roller guide," does not change this analysis, as the same logic would apply. Accordingly, the Court construes the disputed terms consistent with their plain and ordinary meaning—that is, a "rotatable device for guiding the cable."

While it is unnecessary to consult the dictionary definitions provided by Lippert, those definitions are consistent with this construction. Specifically, "roller" is defined as "[a] hard revolving cylinder used to lessen the friction of *anything passed over it*" (Oxford English), while "guide" is defined as "any device which steadies *or directs motion*" (Webster's). Moreover, because the meaning of these terms is reasonably discernible, as discussed herein, Defendants have not shown that they are invalid for indefiniteness under 35 U.S.C. § 112(b).

### e. "said housing surrounding said spring from said housing first end to said cable first end and exposing said at least one roller"

Lippert argues that the phrase "said housing surrounding said spring from said housing first end to said cable first end and exposing said at least one roller" should be given its plain and ordinary meaning. On the other hand, Defendants argue that the disputed phrase should be construed to mean "one side of the housing terminates at the first end of the cable and prior to the roller."

Claim 1 contains the entirety of the disputed phrase, but does not recite that "one side of the housing terminates . . . prior to the roller." However, unasserted claims 4 and 5, which depend from claim 1, indicates that the housing has "a top wall and a first and second side wall" and that the "top wall extends along said housing until before said at least one roller." 6:16-23. While it is true that claims 4 and 5 identify the side that extends until the roller as the "top wall," the Defendants' proposed construction would still violate basic claim construction principles by seeking to inject a "termination" limitation from dependent claim 5 into the corresponding independent claim 1. *See Nazomi Commc'ns, Inc.*, at 1370; *Versa Corp.,* 392 F.3d at 1330; *see also SRI Int'l*, 775 F.2d at 1122.

23

The Court recognizes that the specification discloses Figures 2 and 3 as depicting the following: "top wall of assembly housing is shortened and removed from a point just before the placement of first roller" and "top wall of housing does not extend completely to the rearward portion of housing since cable must extend upwardly outside of the area of containment of housing." 4:50-56. Yet, it is improper to read a limitation from the description of the preferred embodiment into the claims. *See Phillips*, 415 F.3d at 1319-20; *Innova/Pure*, 381 F.3d at 1117. The problem caused by implementing such a limitation is demonstrated by the fact that Figure 6 discloses another embodiment wherein the housing would not appear to terminate at the roller. FIG. 6. The claims and specification demonstrate both that Defendants' proposed construction is incorrect,[13] and that neither the description nor the drawings meet the "exacting" criteria for lexicography or disclaimer. *See GE Lighting Sols., LLC*, 750 F.3d at 1309.

While resorting to dictionary definitions is again unnecessary in this instance, the definitions confirm that claim 1 uses the disputed phrase consistent with its plain and ordinary meaning, where "expose" means to "[c]ause or allow to be seen" (Oxford English) and to "display to view" (Webster's). Accordingly, no further construction of the phrase is necessary, and the Court declines to import the limitation sought by Defendants.

---

[13] To the extent Defendants argue that the housing, if not terminating before the first roller, would render the invention inoperable, the argument appears to assume the invention's horizontal orientation which has been rejected by the Court with respect to the relevant disputed terms. In any event, the Court has not been provided with sufficient evidence upon which to make a determination concerning inoperability, *see Trumbull*, 67 F.2d at 980; *see also EMI Grp. N. Am., Inc*., 268 F.3d at 1348-49; and thus, declines to do so at this time.

**f. "side rail"**

The primary dispute over the proper construction of the term "side rail" concerns Defendants' contention that it should include a "horizontal" limitation. But the Court has already dispensed with that argument with respect to this term.

That leaves Lippert's proposed construction that the term "side rail" should be construed to mean "a structure on a side of the trailer." However, the Court recognizes that this construction was provided mainly to fend off the Court's application of a horizontal orientation. In fact, during the *Markman* hearing, Lippert's counsel acknowledged that it only disputed the inserting of a horizontal orientation into the construction of the term "side rail." [DE 81 at 51].

Given counsel's concession, and the unsubstantiated basis for substituting the term "rail" for the less precise term "structure" (as used in independent claim 11 and dependent claims 14 and 15),[14] the Court declines to engage in any further claim construction as to this term.

**g. "roller guide member within said tailgate lifting assembly"**

Lippert argues that the phrase "roller guide member within said tailgate lifting assembly" should be construed to mean "the roller guide member is inside the tailgate lifting assembly." Defendants argue that to the extent that roller guide member and tailgate lifting assembly can be construed, they should mean "(roller) guide member that is (rotatably) secured within the tailgate lifting assembly."

The Court has already construed "roller guide member" to mean a "rotatable device for guiding the cable"—thereby mooting the need to further consider any reference to rotatability.

---

[14] Notably, these claims already indicate that the side rail is part of the trailer.

Moreover, during the *Markman* hearing, Lippert's counsel indicated that it doesn't dispute that the roller guide member can properly be said to be either "inside" or "within" the tailgate lifting assembly [DE 81 at 197-99]. Lippert also doesn't dispute that the rollers are affixed in the assembly; it simply points out that independent claim 1 denotes that the lifting assembly is "affixed therein," whereas independent claims 17 and 18 do not include this language.

Thus, consistent with the parties' agreement, the Court holds that while the roller guide members are "affixed," ultimately the phrase "roller guide member within said tailgate lifting assembly" is no longer disputed and requires no construction.

### h. "housing having a pre-determined length"

Lippert argues that the term "housing having a pre-determined length" which appears only in claim 1 (and not in the specification), should be construed to mean "a housing of a fixed length sufficient to house the spring, cable, and at least one roller." Defendants do not offer their own construction of the phrase, but contend that Lippert's construction is incorrect because the cable and roller are not entirely within the housing. Defendants also contend that the phrase is indefinite because it requires the "action" of deciding something beforehand.

The Court agrees with the defense that not all of the components listed by Lippert in its proposed construction—that is, "the spring, cable, and at least one roller"—are entirely contained in the housing. The Court has previously expressed that claim 1 makes clear that one or more objects, including the roller and cable, are not necessarily "entirely" enclosed within the housing, while other parts are so enclosed. The specification also describes component parts which extend beyond the housing. *See, e.g.*, 2:10-12, 5:52-55 ("The housing contains therein the biasing spring which is anchored within the housing and connected to the tailgate by a cable" and

26

"the cable extends upward from the first roller to the tailgate"); 3:37-39 ("As is shown in FIG. 2, the lifting assembly is comprised of a housing which retains therein several elements of the lifting assembly") (emphasis added).

On the other hand, the Court disagrees with the defense that the disputed phrase is indefinite because it requires "action," similar to a methods claim. The law indicates that "[c]ourts must generally take care to avoid reading process limitations into an apparatus claim . . . because the process by which a product is made is irrelevant to the question of whether that product infringes a pure apparatus claim." *Research Corp. Techs., Inc. v. Microsoft Corp*., 627 F.3d 859, 873 (Fed. Cir. 2010) (quoting *Baldwin Graphic Sys., Inc. v. Siebert, Inc*., 512 F.3d 1338, 1344 (Fed. Cir. 2008)). Lippert's proposal of "fixed length," however, is not a process limitation. Instead, "pre-determined" as used in claim 1 refers to the size of the housing required to retain several elements of the tailgate lifting assembly. In other words, the asserted claim describes a characteristic of the device itself, not the process by which it is made. And the fact that the size of the housing may depend on the size of the tailgate being biased does not make claim 1 limited to any particular method for making the claimed assembly.

Having said that, because "pre-determined" is a limitation of the housing, it should be given meaning. *See Bicon, Inc. v. Straumann Co*., 441 F.3d 945, 950 (Fed. Cir. 2006) ("Allowing a patentee to argue that physical structures and characteristics specifically described in a claim are merely superfluous would render the scope of the patent ambiguous, . . . [f]or that reason, claims are interpreted with an eye toward giving effect to all terms in the claim.").

As to extrinsic evidence, Defendants have cited dictionary definitions of "pre-determined" as meaning "to determine beforehand." [DE 62-5, Merriam Webster's Collegiate

Dictionary (10th ed. 1995)]. The Federal Circuit has adopted similar constructions involving methods claims. *See, e.g.*, *IGT v. Bally Gaming Int'l, Inc.*, 659 F.3d 1109, 1118 (Fed. Cir. 2011); *Ferguson Beauregard/Logic Controls v. Mega Systems, LLC*, 350 F.3d 1327, 1340 (Fed. Cir. 2003) ("The ordinary meaning of 'predetermine' is 'to determine beforehand.'"); *Abbott Laboratories v. Syntron Bioresearch, Inc.*, 334 F.3d 1343, 1353 (Fed. Cir. 2003) (affirming the district court's definition of "'predetermined amount' as 'an amount determined beforehand'").

In support of using the phrase "fixed length," Lippert relies on Dr. Reinholtz's declaration and *Markman* hearing testimony [DE 46-1 ¶ 26; DE 81 at 176-79]. Dr. Reinholtz asserts that the specification makes clear to the PHOSITA that the "housing" has "components . . . mounted to [it] at fixed locations," and "is not adjustable in length" such that "the components mounted to [it] are in a fixed geometric relationship." Thus, the housing's "length" is not simply "determine[d] beforehand" in the abstract, but rather the "length" of the "housing" is premised on the size of the various components of the housing. Once the components are selected and placed in a fixed geometric relationship, the length of the housing is not going to change.

Accordingly, as to the appropriate construction, the evidence supports that the phrase "housing having a pre-determined length" should be construed as "a structure of a fixed length that encloses or partially encloses one or more objects." The Court chooses this construction because the phrase "to determine beforehand," which is oftentimes used for method claims, may raise issues as to who makes the determination and when that determination is made (that is, "before what?"). *See, e.g., Pause Tech., LLC v. TiVo, Inc.*, 419 F.3d 1326, 1333 (Fed. Cir. 2005) (affirming the district court's construction of the phrase "time interval of predetermined

28

duration" limitation to mean that "the time interval of the recorded signal must be of a fixed duration determined prior to operation."). Nonetheless, use of the word "fixed" also gives meaning to the prefix "pre-" by requiring a degree of immutability that the word "determine" might not by itself demand. *See Innovative Display Techs. LLC v. Acer Inc.*, No. 2:13-CV-522-JRG, 2014 WL 4230037, at \*19–22 (E.D. Tex. Aug. 26, 2014).

### i. "tailgate causing said spring to stretch upon lowering of said tailgate" / "lowering of said tailgate causes said spring to stretch"

Lippert argues that the phrases "tailgate causing said spring to stretch upon lowering of said tailgate" / "lowering of said tailgate causes said spring to stretch" should be construed to mean "the weight of the tailgate causing the spring to stretch when the tailgate is lowered." Defendants argue that Lippert's construction is incorrect because the patent teaches that it is a *user*, not the *weight of the tailgate*, which lowers the tailgate thereby forcing the spring to stretch. The Defendants also contend that the disputed phrases are indefinite because these apparatus claims contain the "action" of lowering a tailgate.

The pertinent claims are dependent claims 10 and 12. Claim 10 recites "[t]he tailgate lifting assembly of claim 6 wherein said spring is a stretchable spring, said tailgate causing said spring to stretch upon lowering of said tailgate." 6:37-39. Similarly, claim 11, from which claim 12 depends, recites "said tailgate lifting assembly having a stretchable spring," with claim 12 adding that "wherein lowering of said tailgate causes said spring to stretch." 6:44-46, 54-55. Thus, the plain language of the pertinent claims describe the spring as one that is capable of stretching. More particularly, the stretching of the spring occurs—as does infringement— whenever the components of the assembly are arranged in such a manner so that the spring

stretches when the tailgate is in an open position. *See, e.g., MasterMine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1316 (Fed. Cir. 2017) (the claims merely use permissible functional language to describe the capabilities of the claimed system); *HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270, 1277 (Fed. Cir. 2012) (the claims make clear that infringement occurs when one makes, uses, offers to sell, or sells the claimed apparatus: the mobile station—which must be used in a particular network environment). Accordingly, it cannot be said that the claims are indefinite for reciting both an apparatus and the method for using that apparatus. *See, e.g., IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005) (a claim is invalid for indefiniteness when it is unclear whether infringement of the claim occurs when one creates the system, or whether infringement occurs when the user actually performs the claimed method of using the apparatus).

Moreover, the specification confirms that the cable will have significant tension so that the tailgate will want to raise with minimal upward force, 4:22-39, and that the spring extends upon "tensioning of lowering of the tailgate." 5:25-29. Consistent with that, Figure 6 depicts the tailgate in the fully raised position and describes the spring as being "in the slightly untensioned position while still maintaining adequate forward force on cable thereby causing the tailgate to be maintained in the raised position." 5:53-62.

In sum, the intrinsic evidence demonstrates that the disputed phrases do not render the claims indefinite, and that their proper construction is consistent with Lippert's proposal, that is: "the weight of the tailgate causing the spring to stretch when the tailgate is lowered."

**j.** **"The tailgate lifting assembly of claim 6 further comprising a trailer and *a tailgate*, said lifting assembly affixed to said trailer, said tailgate hingedly connected to said trailer."** *(Emphasis added to the disputed language).*

Dependent claim 7 consists of this disputed phrase. Lippert argues that claim 7 contains a minor typographical error because the claim should recite "the tailgate," instead of "a tailgate." This construction would indicate that only a single tailgate is being identified.

Defendants argue that the phrase is indefinite because there is a reasonable debate as to how to correct claim 7. Per Defendants, while Lippert has proposed one correction, it is also possible for a trailer to have multiple tailgates, *e.g.*, top/bottom. To cover that possibility, claim 7 could be corrected to recite "further comprising a trailer and a *second* tailgate." The second reference to "tailgate" in claim 7 would then be a reference to the first tailgate recited in claim 6. Alternatively, claim 7 could be further corrected such that the later-referenced tailgate is identified as "said *second* tailgate."

Looking to the patent, claim 7 depends from claim 6, which introduces the term "a tailgate." 6:24-26. Claim 6 states: "The tailgate lifting assembly of claim 1 wherein said second end of said cable is affixed to a side portion of a tailgate." 6:24-26. Claim 7 then states: "The tailgate lifting assembly of claim 6 further comprising a trailer and a tailgate, said lifting assembly affixed to said trailer, said tailgate hingedly connected to said trailer." The rest of the claims in the patent consistently refer to a single tailgate as being part of the invention—never multiple tailgates. *See, e.g.*, 6:34-36 ("The tailgate lifting assembly of claim 7 further comprising a tensioning adjustment mechanism interposed between said second end of said cable and said tailgate"); 6:37-39 ("The tailgate lifting assembly of claim 6 wherein said spring is a stretchable

spring, said tailgate causing said spring to stretch upon lower of said tailgate." Reference to "said tailgate" is a clear statement indicating that the claim is limited to the single, claimed tailgate.

Moreover, other claim language makes clear that the words "first" and "second" are consistently used in the patent where the claimed invention involves two components or two distinct portions of a claimed component. For example, the spring and cable of claims 1 and 11 each have "a first and a second end." 6:1-6, 45-50. Claim 8 claims "a first pin and a second pin." 6:30-33. And claims 11, 17, and 18 claim "a first and second side rail" or "a first side rail and a second side rail." Neither claim 7, nor the claims from which it depends, claims 1 and 6, mention a "first" and "second" tailgate.

The Court further notes that the specification never describes multiple tailgates, but only a single tailgate. 1:10-14 ("The present invention relates to a tailgate lift assembly and particularly to a device which allows a tailgate which is hingedly attached to a trailer to be raised and lowered with relative ease due to the biasing of the lift assembly."); 2:22-27 ("It is a further object of the present invention to provide a tailgate lift assembly which allows for relatively easy manufacturing and integration with both the trailer and the tailgate such that overly burdensome hydraulic mechanisms or pivoting arms are not required."). Also, Figures 1, 2, and 4-6 only show a single tailgate denoted by a single reference number 11. While the Court recognizes that the specification cannot import limitations into the claims, *see Sjolund*, 847 F.2d at 1582, the Court merely references the specification as being consistent with the plain language of the claims which demonstrate that claim 7 contains a minor typographical error as to the singular nature of the tailgate—an error that would have been immediately apparent as a mistake to a PHOSITA. *See Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1353 (Fed. Cir.

2009) (if the correction is not subject to reasonable debate to one of ordinary skill in the art, then a court can correct an obvious typographical error).

Defendants agree that a court can correct typographical errors in some instances [DE 81 at 181-82]. Here, the Court finds this to be one of those instances since it represents a harmless error where the number of tailgates referred to in claim 7 is not subject to reasonable debate. *See Grp. One, Ltd. v. Hallmark Cards, Inc*., 407 F.3d 1297, 1303 (Fed. Cir. 2005) ("A district court can correct a patent only if (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims.") (citation omitted).

Accordingly, the Court finds that the disputed phrase should read "the tailgate lifting assembly of claim 6 comprising a trailer and the tailgate, the lifting assembly affixed to the trailer and the tailgate hingedly connected to the trailer."

**k. "The assembly of claim 11 wherein said tailgate lifting assembly is comprised of a first tailgate lifting assembly and a second tailgate lifting assembly, said first tailgate lifting assembly extending along said first side rail of said trailer, said second tailgate lifting assembly extending along said second side rail of said trailer."**

This disputed phrase consists of the entirety of claim 14 and depends on claim 11. Lippert argues that this phrase should be construed to mean "the tailgate lifting assembly including two tailgate lifting assemblies, the first tailgate lifting assembly extending along the first trailer side rail and the second tailgate lifting assembly extending along the second trailer side rail." Relying in relevant part on *Process Control Corp. v. HydReclaim Corp*., 190 F.3d 1350, 1357 (Fed. Cir. 1999), Defendants argue that the phrase is indefinite because it is nonsensical to have the

33

preamble of claim 11 start off by identifying a "tailgate lift assembly," and then have claim 14 indicate that the tailgate lift assembly is comprised of multiple assemblies.

The Court does not find persuasive Defendants' argument or reliance on *Process Control*. In that case, the court construed the claim term "discharge rate" appearing in multiple clauses to have the same construction, even though using the same construction made the claim nonsensical and invalid. 190 F.3d at 1357. *Process Control* held that "a nonsensical result does not require the court to redraft the claims . . . [r]ather, whereas here, claims are susceptible to only one reasonable interpretation and that interpretation results in a nonsensical construction of the claim as a whole, the claim must be invalidated." *Id*. at 1357.

However, in this case, the fact that the phrase "tailgate lifting assembly" appears several times in claim 14 does not render the claim nonsensical. Rather, it is clear that the patentee evidenced an intent to limit claim 14 to two tailgate lifting assemblies. Specifically, claim 14 relies on the anaphoric phrase "said tailgate lifting assembly" to refer back to "a tailgate lifting assembly," as recited in claim 11. 6:40-53, 59-60. By then specifically reciting "a first tailgate lifting assembly" and "a second tailgate lifting assembly," 6:60-61, claim 14 confirms that the device claimed therein includes two tailgate lifting assemblies. *See KCJ Corp. v. Kinetic Concepts, Inc*., 223 F.3d 1351, 1356 (Fed. Cir. 2000) (unless the claim is specific as to the number of elements, the article "a" receives a singular interpretation only in rare circumstances when the patentee evinces a clear intent to so limit the article). The specification also aligns with and supports Lippert's proposed construction, because a disclosed embodiment includes two tailgate lifting assemblies. 3:43-48 ("Additionally, as can be seen from the perspective view of FIG. 6 and top view of FIG. 4, two cables are utilized to secure the tailgate to the trailer.").

34

Accordingly, the Court does not find the disputed phrase to be indefinite, but construes it to mean "the tailgate lifting assembly including two tailgate lifting assemblies, the first tailgate lifting assembly extending along the first trailer side rail and the second tailgate lifting assembly extending along the second trailer side rail."

### III.    Conclusion

For the foregoing reasons, the disputed terms/phrases are construed in the manner set forth in this Order. The Court will contact counsel in the near future to schedule a telephonic status conference so that this case may move forward.

SO ORDERED.

ENTERED:  August 17, 2018

       /s/ JON E. DEGUILIO
Judge
United States District Court